UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CAROL V.,[1]

Plaintiff,

-vs-

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

DECISION AND ORDER

1:20-CV-0457 (CJS)

INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for Disability Insurance Benefits ("DIB"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Dec. 18, 2020, ECF No. 12; Def.'s Mot., Feb. 16, 2021, ECF No. 13. Plaintiff makes three arguments to support her position that the Commissioner's denial of her application for DIB benefits should be reversed and remanded for further proceedings: (1) the Administrative Law Judge ("ALJ") failed in his duty to fully develop the record, resulting in an RFC finding that is not supported by substantial evidence; (2) the ALJ failed to give good reasons for discounting the opinion of Plaintiff's treating physician; and, (3) the ALJ conducted an improper credibility analysis. Pl. Mem. of Law, 21–30, Dec. 18, 2020, ECF No. 12-1. The Commissioner disputes Plaintiff's contentions.

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 12] is denied, the Commissioner's motion [ECF No. 13] is granted, and the Clerk of Court is respectfully directed to close this case.

LEGAL STANDARD

The law defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to qualify for DIB benefits, the DIB claimant must satisfy the requirements for special insured status. 42 U.S.C. § 423(c)(1). In addition, the Social Security Administration has outlined a "five-step, sequential evaluation process" to determine whether a DIB or SSI claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)).

The claimant bears the burden of proof for the first four steps of the sequential evaluation. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d

303, 306 (2d Cir. 2009).

PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

Plaintiff filed her DIB application on March 7, 2017, alleging a disability onset date of October 5, 2016. Transcript ("Tr."), 80, 161, Oct. 19, 2020, ECF No. 11. In her application, Plaintiff alleged that her ability to work was limited by several conditions, including: hematoma on spine – surgery; bone and plate in neck; degenerative disc disease; bad back; arthritis; cystic mass removal; scoliosis; nerve damage in left leg and foot; discectomy in 2013 and 2014; and depression. Tr. 179. In June 2017, the Commissioner notified Plaintiff that her DIB claim was denied, and explained that "[t]he reports did not show any conditions of a nature that within a year of [the alleged onset date] is expected to prevent [Plaintiff] from working." Tr. 85. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 93.

Plaintiff's request was approved, and the hearing was held via videoconference on January 29, 2019. Tr. 30. Plaintiff appeared with counsel, and an impartial vocational expert joined the hearing by phone. Tr. 32–3. At the outset of the hearing, the following exchange transpired between Plaintiff's counsel and the ALJ:

ALJ: . . . . Counsel, have you had the opportunity to review the record?

ATTY: I have, your honor, and I have no objections.

ALJ: Do you consider the record complete?

ATTY: The only thing that we're missing . . . [Plaintiff] was just in the hospital

> at Mount St. Mary's on December 18 for a bile duct . . . . blockage . . . . I don't consider it necessary for the record.
>
> ALJ: So, I'm going to close the record. I don't think it's necessary either . . . . But I'm going to close the record at this time, okay?
>
> ATTY: Okay.
>
> [Plaintiff]: Okay.

Tr. 33–4.

With respect to her education and work history, Plaintiff testified that the highest grade she completed in school was eleventh grade, that she did not have a GED, and that prior to the alleged onset date she had worked for the Salvation Army thrift store in Lockport, New York, first as a cashier (for three years), then as an assistant manager (for "about a year"), then as a manager (for "about eight or nine years"). Tr. 36–37. Plaintiff stated that she is prevented from working full-time at present because of an awful pain, "[f]rom my spine, my back, and my left leg." Tr. 38. She noted that she has had back pain since 2012 or 2013, and before leaving the Salvation Army had several surgeries to effect two fusions, one in the lower back and one in the neck. Tr. 39. Nevertheless, the pain has persisted such that Plaintiff stated, "I can't stand very long, sit very long. I can't walk very far. I can't concentrate on anything. It's just been very difficult to do anything." Tr. 56.

In addition, Plaintiff testified that she is able to shower and get dressed, but that it takes her one to two hours because she can't lift her legs very far, and needs help from support bars to take a shower. Tr. 42. She admitted that she should use a cane more than she does, but that she seems to trip over it. Tr. 43. She stated that she has to sit on a stool to cook or wash dishes, and for the past three or four years she has had to use a "claw" to pick things up so that she doesn't have to bend. Tr. 43–4. Plaintiff also said that

she can sit for only about ten to fifteen minutes before she has to stand up, and that she can stand for only about five minutes before she has to sit down. Tr. 46. She can walk "a little bit on medication, but once [the medication] wears off, I got to go to bed"; she estimated her capacity for walking to be about 100 yards. Tr. 43.

Plaintiff stated that her back and leg pain typically wakes her up about 3:00 AM, that she lays in bed until her daughter leaves for school at 6:30 AM after which she tries to fall back asleep, and that she then takes a nap from 1:00 PM to 5:00 PM because she "won't feel pain if [she's] sleeping." Tr. 50–1. Plaintiff indicated that she has experienced significant weight gain since the alleged onset date because her children bring her food in bed so that she doesn't have to walk up and down stairs. Tr. 50–51. Her son helps make the meals at night, her daughter does the laundry because it's hard for Plaintiff to bend to load the washer, and she goes grocery shopping with her son or daughter so that they can help carry the groceries into the house. Tr. 54. Plaintiff stated that she has no friends or social life, and that she does not attend religious services. Tr. 54.

On March 22, 2019, the ALJ denied Plaintiff's claim for DIB benefits. Tr. 48. In his decision, the ALJ found that Plaintiff met the special insured status requirements of the Social Security Act through September 30, 2022. Tr. 12. At step one of the five-step evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 5, 2016, the alleged onset date. Tr. 12. At step two, the ALJ determined that Plaintiff has the following severe impairments: obesity; thoracic spine degenerative disc disease with radiculopathy; lumbar spine degenerative disc disease with spondylosis and radiculopathy; cervical spine degenerative disc disease; bilateral hips degenerative joint disease; and left knee degeneration. Tr. 13. The ALJ also

assessed Plaintiff's alleged mental impairments – major depressive disorder, adjustment disorder, and anxiety – utilizing the "special technique" required by 20 C.F.R. § 404.1520a and § 416.920a.[2] Tr. 13. In so doing, the ALJ determined that Plaintiff's alleged mental impairments caused no more than mild limitations in any of the four psychological areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. Tr. 13–14. Therefore, the ALJ found that Plaintiff's mental impairments are non-severe. Tr. 41.

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in § 1.02 or § 1.04 in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 15. Further, although the ALJ found that Plaintiff's obesity was severe, he nevertheless concluded that she does not have any impairments that, in combination with obesity, meet a listing. Tr. 15. Then, before proceeding to step four, the ALJ carefully considered the entire record and determined that Plaintiff had the residual functional capacity[3] ("RFC")

---

[2] The Second Circuit has held that where an ALJ's failure to adhere to the regulations' special technique is not harmless, failure to apply the "special technique" is reversible error. *See Kohler v. Astrue*, 546 F.3d 260, 265 n. 4 (2d Cir. 2008). The listings of specific mental impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 ("App'x 1 § 12.00") provide the ALJ with detailed guidance for application of the "special technique." Generally, a claimant must satisfy at least two classes of criteria to justify a finding of a mental disorder. "Paragraph A" criteria include the "the medical criteria that must be present in [a claimaint's] medical evidence" to indicate a particular disorder (e.g., the mental disorder of "schizophrenia" requires that the evidence include medical documentation of hallucinations or another similar symptom). App'x 1 § 12.00A(2)(a). "Paragraph B" criteria are four broad areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. App'x 1 § 12.00A(2)(b). A claimant must show an "extreme" limitation of one, or "marked" limitation of two, of the Paragraph B criteria. "Paragraph C" criteria are used to evaluate whether a claimant has a "serious and persistent" mental disorder.

[3] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945.

to perform light work, as defined in 20 C.F.R. § 404.1567(b), except that she:

> [C]an occasionally reach overhead with both upper extremities . . . . frequently operate hand controls, reach in all other directions, push or pull, handle, finger, and feel with both upper extremities. She can occasionally push or pull or operate foot controls with both lower extremities . . . . occasionally kneel, crouch, stoop, balance, and crawl; can occasionally climb stairs and ramps; can never climb ladders, ropes and scaffolds; and can never be exposed to unprotected heights and moving mechanical parts. She can tolerate occasional exposure to vibration. [Plaintiff] is able to understand, carry-out, and remember simple instructions, and make simple work related decisions.

Tr. 16.

Based on this RFC, at step four the ALJ found that Plaintiff is unable to perform her past relevant work as a retail store manager, management trainee, or cashier-checker. Tr. 18. However, based on Plaintiff's age, education, work experience, and RFC, and on the testimony of the vocational expert, the ALJ found Plaintiff would be able to perform such jobs in the national economy as a furniture rental consultant, or shipping and receiving weigher. Tr. 19. Hence, the ALJ concluded that Plaintiff *is not* disabled for the purposes of DIB. Tr. 20.

On March 26, 2019, Plaintiff argued that the ALJ's decision was not based on proper evidence, and asked the Commissioner's Appeals Council to review the ALJ's decision. Tr. 159. The Appeals Council denied Plaintiff's request for review. Tr. 1. The ALJ's decision thus became the "final decision" of the Commissioner.

## DISCUSSION

As noted above, Plaintiff makes three arguments in support of her position that the Commissioner's denial of her application for DIB benefits should be reversed and remanded for further proceedings: (1) the Administrative Law Judge ("ALJ") failed in his

duty to fully develop the record, resulting in an RFC finding that is not supported by substantial evidence; (2) the ALJ failed to give good reasons for discounting the opinion of Plaintiff's treating physician; and, (3) the ALJ conducted an improper credibility analysis. Pl. Mem. of Law at 21–30.

Judicial Review of the Commissioner's Final Decision

42 U.S.C. § 405(g) defines the process and scope of judicial review of the final decision of the Commissioner on whether a claimant has a "disability" that would entitle him or her to DIB and SSI benefits. *See also* 42 U.S.C. § 1383(c)(3). "The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted).

Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, "[t]he threshold question is whether the claimant received a full and fair hearing." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). Then, the reviewing court must determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the claimant received a full and fair hearing, and the correct legal standards are applied, the court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

The ALJ's Duty to Develop the Record and His RFC Determination

Plaintiff maintains that the ALJ failed in his duty to develop the record because the absence of any functional evaluation by a treating source was an "obvious gap in the administrative record," yet the ALJ failed to recontact Plaintiff's treating physicians for a treating source opinion and was left to rely on the medical opinion of the consultative medical examiner. Pl. Mem. of Law at 21–22. Additionally, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence not only because he lacks a functional evaluation by a treating source, but also because he "selectively adopt[s] some of the consultative and non-examining physician's limitations and by selectively citing isolated clinical findings and negative portions of imaging studies." Pl. Mem. of Law at 24. In disputing Plaintiff's argument, the Commissioner observes that the regulation requiring the ALJ to re-contact treating physicians to clarify ambiguities was eliminated in 2012, and points to a Second Circuit decision explaining that ALJs have no obligation to *sua sponte* recontact a treating physician where the record evidence is adequate to make a disability determination. Def. Mem. of Law at 11 (citing *Carvey v. Astrue*, 380 F. App'x 50, 53 (2d Cir. 2010)).

*Duty to Develop the Record*

It is a well-established rule in the Second Circuit "that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2009). Indeed, pursuant to 20 C.F.R. § 404.1512(b), the ALJ is responsible for developing a claimant's complete medical history for at least the twelve months preceding the month in which the claimant filed her

application, and "make every reasonable effort" to help Plaintiff get medical evidence from her medical sources. Nevertheless, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Lowry v. Astrue*, 474 F. App'x 801, 804 (2d Cir. 2012) (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir.1999) (internal quotation marks omitted)).

Here, the ALJ satisfied his duty to develop the record by obtaining an extensive medical history on Plaintiff. This medical history consisted of numerous treatment records prepared by multiple healthcare providers, including several years' worth of records from Plaintiff's long-time primary care provider, Dr. Thomas Hughes, as well as the orthopedics practice at Erie County Medical Center ("ECMC") that performed multiple surgeries on Plaintiff. *See* Tr. 287–396, 438–47, 515–18, 546–48 (Dr. Hughes' treatment records); Tr. 245–66, 459–70 (ECMC treatment and surgery records). In addition to these records, the ALJ had before him the functional evaluation of Plaintiff by the consultative medical examiner, Dr. David Brauer, which was conducted approximately seven months after the alleged onset date. Finally, at the hearing, the ALJ asked Plaintiff's counsel whether he believed the record to be complete, or whether the ALJ needed to hold it open longer, and both counsel and Plaintiff herself stated it was "okay" if the ALJ closed the record. *See, e.g., Assenheimer v. Comm'r of Soc. Sec.*, No. 13 CIV. 8825 ER SN, 2015 WL 5707164, at *4 (S.D.N.Y. Sept. 29, 2015) (adopting the magistrate judge's opinion that "[f]aced with the records of many different physicians and no objections from the plaintiff or her counsel, the ALJ's duty to make 'every reasonable effort' was fulfilled").

*Supported by Substantial Evidence*

In addition to maintaining that the ALJ failed in his duty to develop the record, Plaintiff also argues that without a functional evaluation from Plaintiff's treating physicians, the ALJ's RFC determination is not supported by substantial evidence. Further, Plaintiff asserts that the ALJ "cherry-picked" those parts of the record which supported the ALJ's opinion. Pl. Mem. of Law at 24. The Court disagrees.

As indicated above, provided the claimant received a full and fair hearing, and the correct legal standards are applied, the court's review of an ALJ's decision is deferential: an ALJ's finding "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448 (citation omitted).

The Second Circuit has warned ALJs not to substitute their lay judgment for "competent medical opinion." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). Nevertheless, the Second Circuit has also made clear that it is "within the province of the ALJ" to resolve evidentiary conflicts in the record, and to make the ultimate determination of the scope of the claimant's RFC. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998). Even absent a treating physician's

opinion, an ALJ's conclusion may be supported by "substantial evidence" where it is consistent with the consultative examiner's opinion and other medical evidence in the record. *See, e.g., Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 78 (2d Cir. 2018).

In the present case, the ALJ expressly supported his RFC determination with multiple forms of evidence. First, the ALJ cited three imaging studies of Plaintiff's spine. Two of the studies were conducted in September 2016 and indicated no evidence of fracture or dislocation, as well as normal alignment in both Plaintiff's lumbar spine and her hip. Tr. 16–17 (citing to Tr. 297, 327). The third study was conducted in March 2017, and indicated no fracture or dislocation, and no disc space narrowing in Plaintiff's thoracic spine. Tr. 17 (citing Tr. 298). Additionally, the ALJ discussed multiple records from Plaintiff's treatment by the orthopedics practice at ECMC, which indicated that Plaintiff presented with significant subjective complaints of pain in her lumbar, thoracic, and cervical spine, but with objective findings that did not correspond with Plaintiff's pain. *See, e.g.,* Tr. 17 (citing Tr. 284 (noting Plaintiff's subjective complaints of pain, but with objective evidence of "back and neck non-tender to palpitation . . . no gross deformity [in the spine where the pain is] . . . [and] positive straight leg raising . . . .")).

The ALJ also reviewed the objective evidence from Plaintiff's consultative medical examination in May 2017 with Dr. Brauer, during which she "had difficulty with squatting and presented with a painful gait" and "decreased flexion in the cervical and lumbar spine" and in her hips, but nonetheless demonstrated "stable joints, normal grip strength, normal lower and upper extremity strength, and full bilateral range of motion of the shoulders, elbows, wrists, knees, and ankles." Tr. 17. Based on his examination, Dr. Brauer opined

that Plaintiff was markedly limited in performing full or repetitive squatting, bending, or stooping; moderately to markedly limited in pushing, pulling, or carrying heavy objects; moderately limited in standing for prolonged periods or walking long distances; and not limited in sitting. Tr. 17 (citing Tr. 407–08). Taking Dr. Baur's examination, as well as the other medical evidence in the record, into account, the ALJ assigned only "some weight" to Dr. Brauer's opinion because it did not take into account additional postural, manipulative, or environmental restrictions, and did not provide a detailed assessment of Plaintiff's workplace limitations. Tr. 18.

Lastly, the ALJ summarized the objective medical evidence, and his rationale for his RFC determination:

> The medical evidence indicates the claimant presented with decreased flexion, abnormal gait, and pain. Yet, the medical imaging and physical evaluations note the claimant's neck, spine and hip impairments are not as severe as alleged. Accordingly, the undersigned assigned a residual functional capacity reflective of the claimant's work-related abilities. The light exertional level with postural, manipulative, and environmental limitations is supported by the claimant's history of neck and back pain.

Tr. 18.

With respect to Plaintiff's argument that the ALJ "cherry-picked" objective and opinion evidence from the record to support his RFC, the Court finds that the ALJ's RFC determination is supported by substantial evidence and was accompanied by a thorough explanation that allowed the Court to follow his rationale. While there may be some evidence in the record to support Plaintiff's position that her RFC is more limited than that determined by the ALJ, where "evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.

1982)).

The ALJ's Evaluation of Plaintiff's Treating Physician's Opinion

Plaintiff also maintains that the ALJ erred by failing to give good reasons for discounting the medical opinion of her treating physician, Dr. Thomas Hughes. Pl. Mem. of Law at 25–27. She cites several instances throughout Dr. Hughes' treatment notes in which he states that Plaintiff is disabled from working, and asserts that if the ALJ took issue with Dr. Hughes' failure to provide a functional assessment of Plaintiff's workplace limitations, then the ALJ should have recontacted Dr. Hughes to seek that information. Pl. Mem. of Law at 26–7. The Commissioner counterargues that the ALJ did not err because Dr. Hughes' statements were not "medical opinions" as defined in 20 C.F.R. § 404.1527(a)(1). The Court agrees with the Commissioner.

20 C.F.R. § 404.1527(a)(1) defines "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of a claimant's] impairment(s), including [his/her] symptoms, diagnosis and prognosis, what [he/she] can still do despite impairment(s), and [his/her] physical or mental restrictions." The opinion of a treating physician is afforded "controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal punctuation omitted). However, opinions on issues reserved to the Commissioner – such as opinions that a claimant is disabled – "are not medical opinions . . . ." 20 C.F.R. § 404.1527(d)(1).

In the present case, Plaintiff has provided abundant records from her office visits with Dr. Hughes, her primary care physician. As noted in the ALJ's decision, in August 2016, Dr. Hughes stated in his treatment notes that "[a]t this point it appears that [Plaintiff] is disabled for work . . . ." Tr. 331. Nevertheless, as the ALJ also noted, Dr. Hughes' statement in that regard was conclusory: it was not accompanied by any analysis of "what [Plaintiff] can still do despite [her] impairment(s), and [his/her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

A review of all of Dr. Hughes' treatment notes similarly reveals that although he made a number of statements regarding Plaintiff being disabled, he did not at any time provide opinion as to what Plaintiff was still able to do despite her impairments, and what particular restrictions she had. For instance, on March 30, 2017, Dr. Hughes stated that "it seems extremely unlikely given the severity of [Plaintiff's] disability that she'll be able to go back to work" (Tr. 394), and on May 14, 2018 he stated that Plaintiff "has been now disabled for quite some time" (Tr. 487). Neither of these statements indicates what Plaintiff's physical capabilities or limitations are, and neither is accompanied by any form of functional evaluation. In other words, all of Dr. Hughes' statements with respect to Plaintiff being "disabled" are conclusory assertions that do not meet the criteria for "medical opinions" under 20 C.F.R. § 404.1527(a) and (d).

Accordingly, the Court finds that the ALJ did not err in discounting Dr. Hughes' statements as to Plaintiff's condition. Further, the Court also finds that the ALJ did not have the duty to recontact Dr. Hughes to seek clarification regarding his treatment notes. An ALJ is under no obligation to recontact a treating physician where there were no obvious gaps in the administrative record, and the ALJ possessed a complete medical

history. *Rusin v. Berryhill*, 726 F. App'x 837, 839–40 (2d Cir. 2018) (citing *Rosa*, 168 F.3d at 79 n.5.)

The ALJ's Evaluation of Plaintiff's Subjective Complaints

Lastly, Plaintiff maintains that the ALJ erred in assessing her credibility and the consistency of her complaints with the medical evidence of record. Pl. Mem. of Law at 28. In particular, Plaintiff cites the seven factors listed in 20 C.F.R. § 404.1529(c),[4] in light of which the Commissioner must evaluate her testimony, and states that the ALJ's reasons for rejecting her description of her symptoms "appear to center on the ALJ's selective reliance on raw medical data such as portions of clinical findings and imaging studies." Pl. Mem. of Law at 28 (citing the ALJ's decision at Tr. 15–18). The Commissioner challenges Plaintiff's interpretation of the ALJ's credibility analysis, and suggests that Plaintiff is simply asking this Court to reweigh the evidence in her favor. Def. Mem. of Law at 14. The Court finds no merit in Plaintiff's argument.

As the Second Circuit has stated,

> Evidence of pain is an important element in the adjudication of DIB and SSI claims, and must be thoroughly considered in calculating the RFC of a claimant. *See Lewis v. Apfel*, 62 F. Supp.2d 648, 657 (N.D.N.Y. 1999). "[S]ymptoms, including pain, will be determined to diminish [a claimant's] capacity for basic work activities to the extent that ... [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). To that end, the Commissioner has established a two-step inquiry to evaluate a claimant's contentions of pain. *See* Social Security Ruling 96–7P, 1996 WL 374186 (S.S.A.); 20 C.F.R. § 404.1529(c). First, the ALJ must determine whether the claimant suffers from a "medically determinable impairment[ ] that could reasonably be

[4] 20 C.F.R. § 404.1529(c)(3)(i)–(vii) identifies the seven factors the ALJ should consider in his or her credibility inquiry: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain.

> expected to produce" the pain alleged. 20 C.F.R. § 404.1529(c)(1); *see* SSR 96–7P. Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's pain contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry. See 20 C.F.R. § 404.1529(c)(3)(i)–(vii); *Taylor v. Barnhart*, 83 Fed. Appx. 347, 350–51 (2d Cir. 2003) (summary order).

*Meadors v. Astrue*, 370 F. App'x 179, 183–84 (2d Cir. 2010) (footnote omitted). "An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . ." 42 U.S.C. § 423(d)(5)(A). Thus, the ALJ, "after weighing objective medical evidence, the claimant's demeanor, and other indicia of credibility . . . may decide to discredit the claimant's subjective estimation of the degree of impairment." *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999).

The Court finds no error in the ALJ's assessment of Plaintiff's subjective complaints. In his decision, the ALJ made repeated, specific reference to Plaintiff's complaints regarding her pain: he noted her testimony about constant spine and leg pain and her consequent surgeries (Tr. 16), her complaints of pain to her primary care physician (Tr. 18), her complaints of pain to her orthopedists (Tr. 17), and to the consultative examiners (Tr. 14, 17). Further, the ALJ considered Plaintiff's reports of her daily activities, and the various attempts at treatment and pain mitigation. Tr. 16 (noting Plaintiff's four surgeries); Tr. 17 (noting Plaintiff's reports that physical therapy made the pain worse, but narcotics improved her symptoms). Taking all of this evidence into account, as well as the other evidence in the record, the ALJ concluded that "the longitudinal medical record is not entirely supportive of the intensity, persistence, and limiting effects" of Plaintiff's allegations of pain. Tr. 18. For the reasons cited above, the Court finds that the ALJ's conclusion was supported by substantial evidence.

CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings [ECF No. 12] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 13] is granted. The Clerk is respectfully directed to close this case.

DATED: September 17, 2021
Rochester, New York

Charles J. Siragusa

CHARLES J. SIRAGUSA
United States District Judge